UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CORVEX MANAGEMENT LP and RELATED FUND MANAGEMENT, LLC,

        Plaintiffs,

  -against-

COMMONWEALTH REIT, BARRY M. PORTNOY, ADAM D. PORTNOY, JOSEPH L. MOREA, WILLIAM A. LAMKIN, and FREDERICK N. ZEYTOONJIAN,

        Defendants.

**Civil Action No. 13-CV-10475**

# MEMORANDUM OF LAW IN SUPPORT OF
# APPLICATION FOR A LIMITED TEMPORARY RESTRAINING ORDER

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 Boylston Street
25th Floor, Prudential Tower
Boston, MA  02199-7080
Tel: 617.267.2300
Fax: 617.267.8288

*Attorneys for Plaintiffs Corvex Management LP and Related Fund Management, LLC*

March 14, 2013

# TABLE OF COTNENTS

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| STATEMENT OF FACTS | 3 |
|    I.   The Parties | 3 |
|    II.  This Lawsuit and Defendants' Demand for Arbitration | 4 |
|    III. The Purported Arbitration Bylaws | 4 |
| LEGAL STANDARD FOR THIS APPLICATION | 5 |
| ARGUMENT | 7 |
|    I.   Corvex and Related Are Likely to Succeed on the Merits of Their Claim | 7 |
|       A.  Plaintiffs Never Assented to the Arbitration Bylaws | 7 |
|       B.  The Arbitration Bylaws Are Not Supported By Consideration | 8 |
|       C.  The Arbitration Bylaws Violate the Securities and Exchange Acts | 9 |
|    II.  Plaintiffs Will Suffer Immediate and Irreparable Harm If Arbitration Is Not Stayed | 10 |
|    III. The Relative Hardship Weighs in Favor of Granting Injunctive Relief | 11 |
|    IV. The Public Interest Weighs in Favor of the TRO | 13 |
| CONCLUSION | 15 |

## TABLE OF AUTHORITIES

**Pages**

### Cases

*AT&T Mobility LLC v. Fisher*,
  2011 WL 5169349 (D. Md. Oct. 28, 2011) ................................................................. 11, 12, 13

*Cheek v. United Healthcare of the Mid-Atl., Inc.*,
  378 Md. 139 (2003) ............................................................................................................ 7, 8, 9

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995).................................................................................................................. 7

*Gately v. Commonwealth of Mass.*,
  2 F.3d 1221 (1st Cir. 1993) ...................................................................................................... 6

*Graham v. Smith*,
  292 F. Supp. 2d 153 (D. Me. 2003) ......................................................................................... 7

*Holmes v. Coverall N. Am., Inc.*,
  336 Md. 534 (1994) .................................................................................................................. 8

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002)............................................................................................................. 11, 12

*Intergen v. Grina*,
  344 F.3d 134 (1st Cir.2003)..................................................................................................... 7

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
  560 F.3d 156 (3d Cir. 2009) .................................................................................................... 8

*Lancour v. Lebanon Hous. Auth.*,
  760 F.2d 361 (1st Cir. 1985).................................................................................................... 6

*Merrill Lynch v. Cantone*,
  427 N.J. Super. 45 (App. Div. 2012) ................................................................................ 11, 13

*Morgan Keegan & Co., Inc. v. Louise Silverman Trust*,
  2012 WL 113400 (D. Md. Jan. 12, 2012)......................................................................... 12, 13

*Noohi v. Toll Bros., Inc.*,
  __ F.3d ___, 2013 WL 680690 (4th Cir. Feb. 26, 2013) ....................................................... 9

*Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*,
  640 F. Supp. 1159 (D. Mass 1986) ............................................................................. 6, 11, 13

*Strahan v. Coxe*,
  127 F.3d 155 (1st Cir. 1997).................................................................................................... 6

*Teradyne, Inc. v. Mostek Corp.*,
  797 F.2d 43 (1st Cir. 1986)...................................................................................................... 6

*UBS Sec. LLC v. Voegeli*,
  684 F. Supp. 2d 351 (S.D.N.Y. 2010) ............................................................................... 11, 12

*Vaqueria Tres Monjitas, Inc. v. Irizarry*,
  587 F.3d 464 (1st Cir. 2009) ................................................................................. 6

## Statutes

15 U.S.C. § 77n .............................................................................................................. 9

15 U.S.C. § 78cc(a) ...................................................................................................... 10

9 U.S.C. § 2 .................................................................................................................... 7

Md. Code Ann., Corps. & Ass'ns § 8-301(11) .............................................................. 7

## Rules

Rule 14a-8(i)(2) ............................................................................................................ 10

## Other Authorities

Pfizer, Inc., SEC No-Action Letter,
  *available at* 2012 WL 587597 ............................................................................. 10

Plaintiffs Corvex Management LP ("Corvex") and Related Fund Management, LLC ("Related") (collectively "Plaintiffs") respectfully submit this memorandum of law in support of their application for a limited temporary restraining order, necessary for the sole and narrow purpose of temporarily staying an invalid arbitration proceeding initiated by Defendants, pending the Court's resolution of Plaintiffs' accompanying Motion to Stay Arbitration.[1]

## INTRODUCTION

On March 4, 2013, Defendants CommonWealth REIT ("CommonWealth," or the "Company"), Barry M. Portnoy, Adam D. Portnoy, Joseph L. Morea, William A. Lamkin, and Frederick N. Zeytoonjian purported to initiate arbitration proceedings against Plaintiffs under CommonWealth's Amended and Restated Bylaws ("Article XVI" or the "Arbitration Bylaws"). Under the Arbitration Bylaws, Plaintiffs must appoint an arbitrator by Tuesday, March 19, 2013,[2] or risk having Defendants select two of the three members of the arbitration panel.

Plaintiffs make this application for the limited purpose of temporarily staying arbitration proceedings, including the March 19, 2013, deadline to appoint party arbitrators, pending a determination on the validity of the Arbitration Bylaws. As explained herein and in Plaintiffs' accompanying Motion for Stay of Arbitration, the Arbitration Bylaws are invalid and

---

[1] Litigation between the parties is also pending in the Circuit Court for Baltimore City, Maryland. On February 27, 2013, Plaintiffs filed suit in that court, alleging several claims against Defendants here and another party, Reit Management & Research LLC ("Reit Management") relating to their mismanagement of CommonWealth REIT. Later on February 27, 2013, the defendants to that action (other than Reit Management) purported to initiate an arbitration before the American Arbitration Association (distinct from the arbitration proceeding initiated in connection with the Complaint filed in this action). On March 13, 2013, Plaintiffs filed before the Maryland court a Petition to Stay Arbitration and an Emergency Motion for Temporary Stay of Arbitration Proceedings and Request for Emergency Hearing, similar to the motions now filed here. Also on March 13, Reit Management purported to initiate its own arbitration before the American Arbitration Association. While the Maryland court has yet to set a hearing date for Plaintiffs' application for temporary emergency relief, we will promptly apprise this Court of any rulings therein.

[2] Based on the American Arbitration Association's date of receipt of Defendants' arbitration demand, the arbitrator selection deadline would be March 20, 2013. However, Plaintiffs received the demand a day earlier and therefore, out of an abundance of caution, seek relief by March 19, 2013.

unenforceable for multiple independent reasons, not the least of which is that Plaintiffs have never assented to the Arbitration Bylaws.  Without a temporary restraining order, Plaintiffs, by next Tuesday, will be forced to select an arbitrator and begin arbitration proceedings in a legally invalid arbitration proceeding to which Plaintiffs have never consented.

Defendants will suffer absolutely no harm from the entry by this Court of a limited temporary stay, enjoining the arbitrator selection process until such time as this Court is able to rule on the validity and enforceability of the Arbitration Bylaws.  The claims at issue, both in the litigation, and in the arbitration, are all claims asserted by Plaintiffs.  Defendants therefore have no argument that they will be prejudiced by any short delay to the arbitration (to the extent there is even an arbitration).

Moreover, Plaintiffs are very much likely to succeed on the merits of their claim that the Arbitration Bylaws are invalid and unenforceable.  The Arbitration Bylaws: (1) were implemented without mutual assent, (2) for no independent consideration, (3) prevent the Defendants from bringing claims in court, (4) are unilaterally revocable by Defendants, (5) cannot be revoked by Plaintiffs,  and (6) are unenforceable as against the Securities Act of 1933 (the "Securities Act") and the Securities and Exchange Act of 1934 (the "Exchange Act").  Each of those factors provides an independent basis for finding the Arbitration Bylaws invalid and unenforceable.

Finally, the public interest also favors the entry of a limited temporary stay until this Court is able to rule on Plaintiffs' Motion for Stay of Arbitration.  Public policy supports the preservation of limited resources, including the resources of the parties and the potential arbitral panel, and favors the rejection of unilaterally imposed arbitration provisions.

Accordingly, Plaintiffs respectfully request that the Court enter a limited temporary restraining order, staying the arbitrator selection process and other arbitration proceedings, pending a ruling by this Court on the enforceability of the Arbitration Bylaws.

## **STATEMENT OF FACTS**

### **I.     The Parties**

Plaintiff Corvex Management LP is an investment firm that engages in value based investing across capital structures in situations with identifiable catalysts. Complaint ("Compl.") ¶ 24, Mar. 1, 2013. When this lawsuit was filed on March 1, 2013, Corvex was the beneficial holder of approximately 4.90% of all shares of CommonWealth common stock. *Id.*

Plaintiff Related Fund Management, LLC is a Delaware limited liability company. *Id.* ¶ 25. When this lawsuit was filed on March 1, 2013, Related was the beneficial holder of approximately 4.90% of all shares of CommonWealth common stock. *Id.*

Defendant CommonWealth REIT is a Maryland real estate investment trust, or REIT, that owns a portfolio of office and industrial buildings and whose common stock is publicly traded on the New York Stock Exchange under the ticker CWH. *See* Declaration of Aric Wu, Mar. 13, 2013 ("Wu Decl."), Ex. 2, at 1 (Schedule 14A Definitive Proxy Statement of CommonWealth, Feb. 25, 2013). CommonWealth has a Board composed of five Trustees and is managed by Reit Management & Research LLC ("Reit Management"). *Id.* at 3.

Defendant Barry M. Portnoy is a founder and a Managing Trustee of CommonWealth REIT, and a founder, co-owner, Director, and Chairman of Reit Management. *Id.* at 8–9. Defendant Adam D. Portnoy, the son of Barry Portnoy, is the President and a Managing Trustee of Defendant CommonWealth and the President, CEO, and co-owner of Reit Management. *Id.* at 9.

Defendants William A. Lamkin, Frederick N. Zeytoonjian, and Joseph L. Morea are Trustees of CommonWealth. *Id.* at 7–8.

## II.     This Lawsuit and Defendants' Demand for Arbitration

On March 1, 2013, Plaintiffs commenced this lawsuit in the United States District Court for the District of Massachusetts. Plaintiffs' Complaint seeks declaratory and injunctive relief for alleged violations of federal securities law by Defendant CommonWealth and the Trustee Defendants. Compl. ¶¶ 73–89.

On March 4, 2013, Defendants filed papers to initiate arbitration proceedings against Corvex before the American Arbitration Association ("AAA"). Wu Decl. Ex. 3. In their submission to the AAA, Defendants stated that their dispute with Corvex arose out of the allegations contained in the Complaint filed in this action and appended a copy of the Complaint to their Arbitration Demand form. *Id.*

Defendants purported to initiate arbitration proceedings under Article XVI of CommonWealth's Bylaws. *Id.* Under Section 16.2 of the bylaws, each side to a dispute has fifteen days to select one arbitrator who "may be affiliated or interested persons of such parties." *Id.* Ex. 5, § 16.2. Thereafter, the two party-selected arbitrators shall "jointly appoint" the third and presiding arbitrator. *Id.* If either party fails to timely select an arbitrator, "the other party to the Dispute shall select the second arbitrator." *Id.* Thus, absent immediate relief from the Court, Plaintiffs would be required under the Arbitration Bylaws to select an arbitrator to participate in the three member arbitration panel, or risk having CommonWealth and the Trustee Defendants select *two* of the three arbitrators.

## III.    The Purported Arbitration Bylaws

There has never been any shareholder vote on whether disputes brought by shareholders against CommonWealth and/or its Trustees should be arbitrated. Rather, the Arbitration Bylaws

4

were unilaterally adopted by CommonWealth's Board of Trustees in an amendment to the Company's bylaws. *See id.* Ex. 4 (CommonWealth REIT Form 10-Q, dated Nov. 6, 2009).

The Arbitration Bylaws, to which no shareholder ever assented, are decidedly one-sided. The Arbitration Bylaws can be amended or repealed at any time for any reason, by a mere majority vote of the Trustees named as defendants in this matter. *Id.* Ex. 5, § 14.1 (CommonWealth Amended and Restated Bylaws). However, shareholders are prohibited from making any amendments to Arbitration Bylaws. *Id.* Thus, the Arbitration Bylaws are effectively non-binding on Defendants but binding on Plaintiffs. Moreover, the Arbitration Bylaws apply only to "disputes, claims or controversies brought by or on behalf of" CommonWealth shareholders. *Id.* § 16.1. Defendants are free to resolve disputes *they* initiate in any forum of their choosing. Furthermore, even though the overwhelming majority of disputes brought by or on behalf of shareholders would relate to the conduct of the Company and its agents, the Arbitration Bylaws restrict the parties in arbitration to "only limited documentary discovery." *Id.* § 16.4. To further disincentivize shareholders from bringing any action, the Arbitration Bylaws preclude any attorneys' fee awards even when a shareholder prevails on its claims, and even when those claims are asserted for the benefit—and recovery—of the Company. Section 16.6 of the Arbitration Bylaws states, in relevant part: "[T]he arbitrators shall not render an award that would include shifting of any such costs or expenses (including attorneys' fees) or, in a derivative case or class action, award any portion of the Trust's award to the claimant or the claimant's attorneys." *Id.* § 16.6.

## LEGAL STANDARD FOR THIS APPLICATION

In considering any motion for a temporary restraining order, "a district court is charged with considering: (1) the likelihood of success on the merits; (2) the potential for irreparable

5

harm if the injunction is denied; (3) the balance of the relevant impositions, *i.e.*, the hardship to the non-movant if enjoined as contrasted with the hardship of the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Strahan v. Coxe*, 127 F.3d 155, 160 (1st Cir. 1997).[3] In this Circuit, "the probability-of-success component in the past has been regarded . . . as critical." *Lancour v. Lebanon Hous. Auth.*, 760 F.2d 361, 362 (1st Cir. 1985); *see also Gately v. Commonwealth of Mass.*, 2 F.3d 1221, 1225 (1st Cir. 1993) ("[T]he sine qua non of the preliminary injunction standard is whether the plaintiffs are likely to succeed on the merits." (citations and internal quotation marks omitted)). In contrast, "the measure of irreparable harm is not a rigid one; it has been referred to as a sliding scale, working in conjunction with a moving party's likelihood of success on the merits." *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009).

Corvex and Related seek the entry of a temporary stay of the pending arbitration proceedings based upon the unenforceability of the Arbitration Bylaws. Importantly, the First Circuit has held that when the prerequisites for injunctive relief are met, as is the case here, district courts have the jurisdiction to grant injunctive relief in order to subsequently decide the issue of arbitrability. *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir. 1986) (holding that "a district court can grant injunctive relief in an arbitrable dispute pending arbitration, provided the prerequisites for injunctive relief are satisfied," and affirming the District Court of Massachusetts's grant of such relief).

---

[3] Courts in this district acknowledge that the standard governing temporary restraining orders and preliminary injunctions are the same. *See Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1160 (D. Mass. 1986).

6

**ARGUMENT**

**I.     Corvex and Related Are Likely to Succeed on the Merits of Their Claim**

Plaintiffs are likely to succeed on their claim to stay arbitration because the Arbitration Bylaws are unenforceable.[4] In summary, the Arbitration Bylaws are void for three main reasons: (1) there was no mutual assent to arbitrate between the parties; (2) the alleged agreement to arbitrate was not supported by mutual consideration and is thus at most an illusory agreement; and (3) the Arbitration Bylaws violate the anti-waiver provisions of § 14 of the Securities Act and § 29(a) of the Exchange Act.

**A.     Plaintiffs Never Assented to the Arbitration Bylaws**

First, Plaintiffs will show that there is no enforceable agreement to arbitrate because there was no mutual assent to arbitrate between the parties. Maryland courts assessing the enforceability of arbitration provisions do so by looking to general contract principles under state law. *See Cheek v. United Healthcare of the Mid-Atl., Inc.*, 378 Md. 139, 147 (2003) ("The determination of whether there is an agreement to arbitrate . . . depends on contract principles since arbitration is a matter of contract. As such, 'a party cannot be required to submit any dispute to arbitration that it has not agreed to submit.'" (citation omitted)); *see also* Md. Code Ann., Corps. & Ass'ns § 8-301(11) (decreeing that Maryland REITs may not incorporate provisions in their bylaws that are "inconsistent with law"); *accord* 9 U.S.C. § 2 (Section 2 of

---

[4]   Plaintiffs and Defendants agree that Maryland law applies to the substance of the parties' dispute. *See* Defs.' Mem. of Law in Opp. to Pls.' Mot. for a TRO, Expedited Disc., and Setting a Prelim. Inj. Briefing Schedule, Case 1:13-cv-10405-DJC, Mar. 4, 2013, ECF No. 11, at 10 (analyzing Maryland law); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts"); *see also Graham v. Smith*, 292 F. Supp. 2d 153, 156 (D. Me. 2003) (holding that "[i]t is 'bedrock' that 'arbitration is a matter of contract and that a party cannot be required to submit to arbitration any dispute which he has not agreed so to commit,'" and applying the law of the state under which the disputed contract arose (quoting *Intergen v. Grina*, 344 F.3d 134, 142–43 (1st Cir.2003))).

Federal Arbitration Act, explicitly permitting arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract"). Here, the Arbitration Bylaws were unilaterally foisted upon Plaintiffs, and all other CommonWealth shareholders, without assent—thus, there unequivocally was no agreement to arbitrate. Courts that have interpreted arbitration provisions unilaterally inserted in corporate bylaws have determined that companies must secure shareholders' explicit consent to arbitrate, or else the arbitration provisions are unavailing. *See Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 163 (3d Cir. 2009) (deciding whether lawyer/shareholder assented to arbitration provision in law firm's bylaws).[5] Importantly, such explicit consent does not extend to include constructive notice. *Id.* (rejecting law firm's assertion that plaintiff's "status as a shareholder/director charged [her] with constructive knowledge of the terms of the bylaws and manifested her acceptance of the arbitration provision"). Accordingly, the CommonWealth Defendants cannot contend that Corvex and Related have somehow assented to the Arbitration Bylaws because they knew or should have known about them solely by virtue of being shareholders.

### B. The Arbitration Bylaws Are Not Supported By Consideration

Second, Plaintiffs are likely to succeed on their claim to stay arbitration because the alleged agreement to arbitrate was not supported by mutual consideration and is thus at most an illusory agreement. Under Maryland law, even when incorporated into broader contracts or agreements, arbitration provisions are analyzed as separate contracts and require all of the usual

---

[5] In addressing issues of arbitrability, Maryland courts look to both federal cases and state cases outside of Maryland for guidance. *See Cheek*, 378 Md. at 150 ("align[ing] . . . with courts from other jurisdictions that have found similar language to be illusory" and citing cases from, *inter alia*, the federal district courts and the Supreme Court of Arkansas); *Holmes v. Coverall N. Am., Inc.*, 336 Md. 534, 548–49 (1994) (noting that other states have permitted arbitration of actions that fall under the purview of those states' franchise acts, and that "other courts have held arbitration clauses enforceable in disputes which centered on other statutory schemes").

8

elements of contract formation to be valid. *See Cheek*, 378 Md. at 147. Agreements to arbitrate, therefore, require adequate consideration, independent from the consideration for the overall contract. *See Noohi v. Toll Bros., Inc.*, __ F.3d ___, No. 12-1261, 2013 WL 680690, at *3, 6–9 (4th Cir. Feb. 26, 2013). Here, Defendants provided no consideration to Plaintiffs or other shareholders in return for the purported involuntary surrender of their right to litigate. This lack of consideration is apparent in two ways. First, the Arbitration Bylaws are addressed solely to disputes, claims or controversies brought *by* shareholders *against* CommonWealth and its Trustees. Disputes raised by CommonWealth, on the other hand, may be brought in any forum and are not restricted to arbitration. Defendants' failure to bind themselves to the arbitration agreement results in a total lack of consideration for the arbitration contract. *See id.* at **9–10 (holding that where only one party to agreement is required to arbitrate, no agreement exists). Second, the CommonWealth Defendants may amend the terms of the Bylaws or repeal them altogether at will and with no requirement that they consult the purportedly arbitration-bound shareholders. Shareholders, however, cannot do the same. This feature renders the Arbitration Bylaws completely one-sided, and thus void for lack of consideration under binding Maryland precedents. *See Cheek*, 378 Md. at 144–49 (finding that because defendant retained right to "'alter, amend, modify, or revoke'" employee arbitration policy "'at its sole and absolute discretion at any time with or without notice' and without consent," defendant's promise was illusory and agreement was unenforceable for lack of consideration).

**C.     The Arbitration Bylaws Violate the Securities and Exchange Acts**

Finally, Plaintiffs are likely to succeed on their Motion for Stay of Arbitration because even if there were an agreement to arbitrate between Plaintiffs and Defendants—which there is not—the Court cannot enforce the Arbitration Bylaws under the anti-waiver provisions of the Securities and Exchange Acts. Both Securities Act § 14, 15 U.S.C. § 77n, and Exchange Act §

9

29(a), *id.* § 78cc(a), the anti-waiver provisions of the federal securities laws, declare as void "any condition, stipulation, or provision binding any person to waive compliance with" the federal securities statutes and their rules.

The U.S. Securities and Exchange Commission ("SEC") recently addressed an arbitration provision sought to be contained in a public company's bylaws. *See* Wu Decl. Ex. 1, at 2, (Pfizer, Inc., SEC No-Action Letter), *available at* 2012 WL 587597, at *1. In a February 22, 2012 "No-Action Letter," the SEC stated that there is support for the view that an arbitration provision contained in a company's bylaws would "violate the federal securities laws" and that exclusion of the provision from company bylaws was appropriate under Rule 14a-8(i)(2). *Id.*

Here, the Arbitration Bylaws are most certainly a "condition, stipulation, or provision binding any person to waive compliance with" both federal securities acts because they force shareholders to waive their right to have their securities claims, such as Plaintiffs' Section 10(b) and 20(a) claims, heard in the federal courts. They also require the waiver of important procedural rights, such as the right of a prevailing party to collect attorneys' fees. As such, the Arbitration Bylaws violate Securities Act § 14 and Exchange Act § 29(a), and cannot be enforced.

## II. Plaintiffs Will Suffer Immediate and Irreparable Harm If Arbitration Is Not Stayed

Absent relief from the Court, pursuant to the terms of the Arbitration Bylaws invoked by Defendants, Plaintiffs will be required by Tuesday, March 19, 2013 to select an arbitrator to participate in the three member panel being organized by AAA. Proceeding with the formation of an arbitration panel prejudices Plaintiffs and is a waste of both parties' resources, because there is no valid and enforceable arbitration agreement between the parties.

The irreparable harm in this case is clear. Plaintiffs never agreed to arbitrate, and to force them to begin a process that most likely will ultimately be halted, *see supra* Part I (discussing

Plaintiffs' likelihood of succeeding on their Motion for Stay of Arbitration), is a violation of their rights constituting irreparable harm. *See UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010) ("It is beyond dispute that irreparable harm would result if [Plaintiff] were compelled to arbitrate defendants' claims without having agreed to arbitration. . . . [Plaintiff would] lose its right to have defendants' claims adjudicated in a court of law, rather than in an arbitral forum to whose jurisdiction it has not consented."); *AT&T Mobility LLC v. Fisher*, Civ. No. DKC 11-2245, 2011 WL 5169349, at *7 (D. Md. Oct. 28, 2011) (stating that "being forced to arbitrate a claim one has not agreed to constitutes irreparable harm"); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("'[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (citation omitted)); *see supra* Part I.B.2 (delineating hardship to Plaintiffs).

And as stated above, forcing Plaintiffs to expend resources, including time and money, which they will not be able to recover, in an arbitration to which they have not agreed to submit, is irreparable harm. *See supra* Part I.B.2 (describing waste of resources); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cantone Research, Inc.*, 427 N.J. Super. 45, 63 (App. Div. 2012) (affirming trial court's determination that "plaintiffs will suffer irreparable harm if forced to expend time and resources arbitrating an issue that is not arbitrable").

### III. The Relative Hardship Weighs in Favor of Granting Injunctive Relief

The third element of the test for a temporary restraining order, balancing of the relative hardships, also weighs in favor of granting injunctive relief. Under this element, "the plaintiffs must show that such injury to them outweighs any harm which granting injunctive relief would inflict on the defendants." *Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1160 (D. Mass 1986).

Here, Plaintiffs face a far greater hardship than Defendants. Plaintiffs seek only to temporarily stay arbitration, including the parties' appointment of arbitrators, while this Court resolves Plaintiffs' motion to permanently stay arbitration in favor of the litigation before this Court. While the relief Plaintiffs request is minimal, the hardship they will face without this relief is great: they will be forced to immediately pursue arbitration of a claim they have not agreed to arbitrate, in blatant violation of their rights. *Howsam*, 537 U.S. at 83 ("'[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (citation omitted)); *Morgan Keegan & Co., Inc. v. Louise Silverman Trust*, Civ. No. JFM-11-2533, 2012 WL 113400, at *5 (D. Md. Jan. 12, 2012) (In contrast to very little potential harm to defendants, the harm to plaintiff of "losing the right to have defendants['] claims adjudicated in court is more significant and outweighs the potential harm to defendants."); *AT&T Mobility*, 2011 WL 5169349, at *7; *see Voegeli*, 684 F. Supp. 2d at 354 (If arbitration were not enjoined, "UBS Securities would also lose its right to have defendants' claims adjudicated in a court of law, rather than in an arbitral forum to whose jurisdiction it has not consented."); *supra* Part II (describing irreparable harm Plaintiffs will suffer). In addition, allowing arbitration to go forward while Plaintiffs' Motion for Stay of Arbitration is pending would be a waste of resources, both those of the parties and the potential arbitration panel, especially in light of Plaintiff's high likelihood of success and the low probability that arbitration will ultimately proceed. *See Morgan Keegan*, 2012 WL 113400, at *5 (holding that harm to plaintiff of expending resources outweighs harm to defendants of delay in arbitration); *AT&T Mobility*, 2011 WL 5169349, at *7 ("Moreover, with the other proceedings that are ongoing at this time, devoting any more resources to the arbitrations harms [AT&T Mobility] in its ability to participate in the larger proceedings.").

12

In contrast, this Court's decision to enter a temporary restraining order staying the arbitration proceedings will not result in any hardship to Defendants whatsoever. *AT&T Mobility*, 2011 WL 5169349, at *7 (holding that balance of hardships was in favor of plaintiff seeking to stay arbitration where "a temporary delay in arbitration is the only harm potentially being inflicted on [defendant], . . . [while] if the arbitration goes forward, [plaintiff] will forever lose its right not to arbitrate this claim"); *Morgan Keegan*, 2012 WL 113400, at *5 (finding on motion for preliminary injunction of arbitration that "only harm defendants would suffer is a delay in their pending . . . arbitration"); *see also Merrill Lynch*, 427 N.J. Super. at 55–56, 63 (finding no potential hardship to defendants if court preliminary enjoined arbitration where claims for damages had "'not even accrued and will not accrue at all unless and until at a minimum . . . defendants are found to be liable'"). Plaintiffs seek merely to maintain the status quo, which has not and will not harm Defendants, whose demand for arbitration encompasses only Plaintiffs' claims.

## IV. The Public Interest Weighs in Favor of the TRO

The fourth and final element of this jurisdiction's test for a temporary restraining order is a consideration of the public's interest. "[T]he plaintiffs must show that the public interest will not be adversely affected by the granting of injunctive relief." *Quincy Cablesystems*, 640 F. Supp. at 1160. Here, public policy also favors the award of a limited stay.

Absent assent to arbitration, public policy favors a party's right to have its day in court and to litigate its claims with all of the protections afforded by the judicial system. *See supra* Parts I.B.2–3 (citing cases holding that Plaintiffs' right to be heard in court cannot be denied them without causing irreparable harm). Public policy also supports the preservation of limited resources, including the resources of the parties and the potential arbitral panel. Enforcement of the provisions of the Arbitration Bylaws prior to a ruling by this Court on their enforcement

13

would waste the resources of the parties and the arbitral panel while furthering an arbitration proceeding that, since it is the product of neither consent nor consideration, cannot be maintained under Maryland law.  Finally, public policy supports the rejection of unilaterally imposed arbitration provisions, designed to disempower shareholders and entrench company management.

## **CONCLUSION**

For the reasons set forth above, Corvex and Related respectfully request that the Court (1) enter a limited temporary restraining order staying the arbitration proceeding initiated by Defendants, pending the Court's resolution of Plaintiffs' accompanying Motion to Stay Arbitration; and (2) grant such other and further relief as the Court deems just and proper.

DATED:  March 14, 2013

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By: /s/      David E. Marder
David E. Marder (552485)

800 Boylston Street
25th Floor, Prudential Tower
Boston, MA  02199-7080
demarder@rkmc.com
Tel: 617-267-2300
Fax: 617-267-8288


**GIBSON, DUNN & CRUTCHER LLP**

Adam H. Offenhartz (admitted *pro hac vice*)
Aric H. Wu (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
aoffenhartz@gibsondunn.com
awu@gibsondunn.com
Tel:  212-351-4000
Fax:  212-351-4035

*Attorneys for Plaintiffs Corvex Management LP and Related Fund Management, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the above document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 14, 2013.

Courtesy copies were also sent via electronic mail and first class mail, postage prepaid to:

ROBERT S. SAUNDERS
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
920 N. King Street
Wilmington, DE 19801

JAMES R. CARROLL
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street
Boston, MA 02108

                                                 /s/ David E. Marder
                                       _____
                                         David E. Marder

                                   ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
                                   800 Boylston Street
                                   25th Floor, Prudential Tower
                                   Boston, MA  02199-7080
                                   617.267.2300
                                   demarder@rkmc.com